OPINION. Ratjm:, Judge: 1. The first question is whether the entire net income of Royal, computed on a calendar year basis for the years 1942, 1943, and 1944, is includible in petitioner’s gross income for the taxable years 1942, 1943, and 1944. The petitioner contends that it is not and urges that his daughter, Anne Davis, was the legal and true owner of the business of Royal during the taxable years and that no part of its income is chargeable to him. We are convinced that the business of Eoyal, which was clearly the business of petitioner before he was denied a wholesale liquor license in September 1941, continued to be his business when 90 days later its operations were resumed under the name “Anne Davis, doing business as Royal Distillers Products.” The change of name did not result in any real change in operation or in the ownership of assets, and we are satisfied that the alleged change in ownership was a shami. Petitioner continued to control and dominate Royal as he had done theretofore, and even while he was in prison, during the 9-month period beginning in May 1942, he kept in touch with and exercised control over its activities insofar as he could. The success of its business depended upon his experience, ability, business acumen, and contacts in the liquor industry. When it resumed activities on December 1, 1941, he operated it in the same manner, in the same location, and with the same employees as theretofore. His daughter, Anne Davis, was unfamiliar with the liquor business and her participation in its affairs was confined largely to the signing of blank checks which were kept at Royal’s place of business. All that she ever received from Royal as a distribution of its profits was $6,500 in August 1943, to make a downpayment on a house. This so-called $6,500 distribution, however, was in substance nothing more than a gift from father to daughter. After December 1,1941, petitioner retained control of Royal’s income and used it for his own benefit; he was the true owner of such income. To the extent that Anne Davis’ name appeared in connection with any of the investments made out of the profits of the business, we are satisfied that it merely represented an effort to keep up the pretense that she was the owner. The income realized from the operation of Royal during the calendar years 1942, 1943, and 1944 belonged to petitioner and must be charged to him. 2. The parties have stipulated that the respondent correctly determined on a calendar year basis, for the years 1942,1943, and 1944, that part of the net profit of Royal for those years which was reflected on its books and records. The petitioner contends, however, that the respondent erred in determining that either he or Royal received in cash and failed to report for Federal income tax purposes $174,063.65 in the year 1943 and $7,706.75 in the year 1944, representing profit realized over and above the invoice prices on sales made in those years. At the hearing petitioner admitted that cash over and above the invoice prices was received on sales by Royal in the years 1943 and 1944 and did not establish that these receipts were less than the amounts determined by the respondent. He urges, however, that they were offset by overceiling payments to suppliers, and that no taxable income accrued. Cf. Lela Sullenger, 11 T. C. 1076. There is a sharp conflict between the testimony of petitioner and of witnesses for the respondent, Sam Eastman, Harry Moll, and Louis Blumenthal, as to overceiling payments for merchandise by Royal. Petitioner testified that the entire amounts of the overceiling payments received in cash on sales by Royal were used by him in turn to make cash payments in excess of invoice prices on purchases. Respondent’s witnesses, who sold the whiskey to Royal, denied that they ever received such cash payments. If petitioner told the truth, then Eastman, Moll, and Blumenthal lied; and if they told the truth, then petitioner’s testimony was false. The credibility of these four witnesses, therefore, becomes of crucial importance. We have heard and observed them, and have used our best judgment in evaluating their testimony. Eastman, Moll, and Blumenthal controlled supplies of scarce whiskey. Our appraisal of them on the witness stand leads us to conclude that their testimony was not truthful, and that they exacted everything that the traffic would bear. They were in the “driver’s seat,” and we have no doubt that they attempted to take full advantage of that fact. We are satisfied that the greater portion of the overceiling receipts found its way to the suppliers and was not retained by petitioner. On the other hand, we do not believe petitioner’s testimony that he did not retain any of the overceiling receipts. Substantial risks, entailing criminal penalties, were involved in selling on the black market, and we do not believe on this record that petitioner incurred such risks without expectation of profiting from such sales to a greater degree than the rather modest legal markup would permit. In this posture of the case, we cannot find, in accordance with petitioner’s contention, that he did not have the benefit of any of the overceiling payments, nor can we find, in accordance with the Government’s contention, that petitioner had the benefit of all of such payments. No records were kept of the overceiling aspects of these transactions, and the situation calls for the exercise of practical judgment based on such meager evidence as the record discloses. Cf. Cohan v. Commissioner, 39 F. 2d 540, 544 (C. A. 2). Our findings reflect our conclusion that the greater portion of such payments represented additional cost of merchandise exacted by the suppliers, and the remainder represented additional income received by petitioner. Accordingly, we do not agree with the respondent that there was unreported income in the amount of $174,-063.65 in 1943 and $7,706.75 in 1944. Our best judgment is that the net profit, representing the portion of unreported overceiling receipts retained by petitioner amounted to $50,000 for the year 1943, and $5,000 for the year 1944. 3. As to the fraud issue, the burden was on the respondent. We think he sustained his burden. In each of the years 1943 and 1944 petitioner received cash in excess of the invoice prices on sales of Royal, and paid part of this excess to those from whom whisky was purchased. His daughter, Anne, knew nothing about these receipts and disbursements and did not report them in her returns. The petitioner who knew about them and the profit which resulted therefrom failed to report the profit realized by him in his income tax returns for 1943 and 1944. His failure to report this profit in such returns is clear and convincing evidence of his fraudulent purpose. We have, therefore, found as a fact that a part of the deficiency for each of the years 1943 and 1944 is due to fraud with intent to evade tax. Moreover, it has clearly been shown that the attempt to ascribe Royal’s profits to Anne Davis was a sham, and it is plain that petitioner’s failure to report such profits was deliberate and fraudulent. Decision will be entered under Bule 50.